IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| KRISTI SEYMOUR, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. _____ | |
| | ) | | |
| RENAISSANCE HEALTHCARE GROUP, LLC, | ) | JURY DEMAND | |
| d/b/a PASADENA VILLA'S SMOKY | ) | | |
| MOUNTAIN LODGE, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## COMPLAINT

Kristi Seymour, Plaintiff, for her cause of action against Renaissance Healthcare Group,

LLC, d/b/a Pasadena Villa's Smoky Mountain Lodge, Defendant, states as follows:

1.     Kristi Seymour is a citizen and resident of Anchorage, Alaska.

2.     Renaissance Healthcare Group, LLC, d/b/a Pasadena Villa's Smoky Mountain

Lodge (hereinafter referred to as "Renaissance"), is a limited liability company organized and

existing pursuant to the laws of the State of Florida.  The principal place of business of

Renaissance is 119 Pasadena Place, Orlando, Florida  32803 and Renaissance may be served

with process through its registered agent in Tennessee, Corporation Service Company, 2908

Poston Avenue, Nashville, Tennessee  37203.  Renaissance's principal place of business in

Tennessee is known as the Pasadena Villa's Smoky Mountain Lodge and is located at 3889

Wonderland Lane, Sevierville, Tennessee  37862.

3. The Defendant is an employer subject to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981(a).

4. Jurisdiction in this matter is founded upon 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e-5(f). Venue is proper under the provisions of 28 U.S.C. § 1391.

5. As a result of the actions of the Defendant described below, Kristi Seymour filed a timely charge of sexual discrimination, sexual harassment, and retaliation on or about February 1, 2012, with the Equal Employment Opportunity Commission ("EEOC").

6. On or about January 10, 2014, Kristi Seymour received a Notice of Right to Sue from the EEOC. The Notice is dated January 7, 2014. A true and correct copy of the Notice is attached hereto as Exhibit A and is incorporated herein by express reference.

7. Kristi Seymour has satisfied all of the procedural and administrative requirements of Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, by filing a timely written charge of discrimination with the U.S. Equal Employment Opportunity Commission and filing this Complaint within ninety days from the receipt of the Notice of Rights to Sue.

8. Kristi Seymour ("Seymour") is female.

9. Renaissance is an employer engaged in an industry affecting commerce and employs more than fifteen regular employees.

10. Renaissance operates the Pasadena Villa's Smoky Mountain Lodge which is a residential mental health treatment facility for adults.

11. Kristi Seymour was first hired to work in Sevier County, Tennessee, by the Defendant in August 2010 as a therapist. Her specialty with the Defendant was equine therapy.

She was promoted to Administrator within a few months after beginning her employment and then she was also responsible for overseeing many aspects of the day-to-day operations of the facility.

12.     During her employment with the Defendant, Kristi Seymour performed her duties in a satisfactory manner.

13.     During her employment, Kristi Seymour was subjected to unwelcome sexually offensive remarks and conduct from one of the owners of Renaissance, Jennifer Kachmarik (hereinafter referred to as "Kachmarik"). Kachmarik made numerous direct comments on many occasions that were sexually toned in nature or were direct sexual remarks. Kachmarik also made sexual advances to Seymour. The comments and advances were sufficiently severe and pervasive as to create an intimidating, hostile, and offensive work environment. Kachmarik had supervisory authority over the terms and conditions of the employment of Kristi Seymour.

14.     As an example of the sexual remarks and advances, in December 2010 Kachmarik invited Seymour and her boyfriend to Kachmarik's home for a celebration dinner for Seymour's promotion to the Administrator position. Kachmarik served Seymour alcohol and then made numerous sexual comments to her throughout the evening. For example, Kachmarik stated that "You look so pretty." Kachmarik then stated that Kristi Seymour and her boyfriend could stay over at her house and that she wanted to see Kristi Seymour in some pajamas. Kachmarik attempted to touch Seymour's shoulder and hair when she stated this. Because both Kristi Seymour and her boyfriend had consumed champagne for toasts they did not want to drive and at 11:30 p.m. they went upstairs and locked the door to a guest room. They rested for three hours and then left Kachmarik's home around 3:00 a.m. Kachmarik called Kristi Seymour the next day and said she was upset that Kristi Seymour did not stay and she stated that she wanted Kristi

Seymour and her husband, George Kachmarik, to be at breakfast together "in our pajamas, but maybe next time."

15.     In April 2011, Kachmarik asked Kristi Seymour to come again to her home. Kristi Seymour was on her way home from riding and stated that she was not dressed for a business meeting because it was the weekend and she had been riding. Kristi Seymour came to the home as requested, however, and Kachmarik stated to Seymour as she walked through the door that she looked very sexy and told her that her "ass looks good in riding pants." Kristi Seymour felt uncomfortable and told Kachmarik that she really could not stay and asked if they could reschedule the meeting unless it was an emergency situation. Kristi Seymour left and Kachmarik had a very displeased look on her face.

16.     Kristi Seymour lived in the company farmhouse as a part of her compensation. One day Kachmarik walked into the farmhouse without Seymour's permission. Kachmarik then walked down the hallway and walked into the clothes closet. Kachmarik walked around the room, touching Seymour's clothing and making comments about the color or the quality. Kachmarik stated that she would like to see Kristi Seymour in a red dress that she picked up. Kachmarik then insisted that Seymour go to dinner with her and her husband that evening. Seymour was very uncomfortable. Kachmarik attempted to have Kristi Seymour sit next to her at the restaurant but Seymour was able to sit next to her husband in the booth across from her.

17.     In June or July 2011, Seymour began dating a man who was an independent contractor working with Renaissance. A co-worker saw Kristi Seymour on a date and filed a complaint with Human Resources that, as the Administrator, Kristi Seymour was giving the contractor preferential treatment for work. The Human Resources investigation determined that the allegation was unfounded and the farm staff person was reassigned. Kachmarik then asked

4

Kristi Seymour numerous times in conversations that week if Seymour was sexually attracted to the female staff person that had filed the complaint. Kachmarik stated that the female co-worker must be attracted to Seymour or else why would there be an issue with Seymour dating the contractor. Seymour is heterosexual and simply did not know what to say in reply to Kachmarik's statement. Kachmarik then asked "Why didn't you ask my permission to date" the contractor? Kachmarik stated that the contractor was a "young buck." Seymour said that her personal life was private and that her personal life was not affecting her job performance. Kachmarik stated that by not asking permission, Seymour blindsided Kachmarik about her actions and she was now "unhappy" with Seymour.

18.     Two weeks later Seymour was demoted from the Administrator position to a newly created Equine Psychotherapy Program Manager Position. Kachmarik demanded that Seymour come to her house for another meeting. Seymour wanted to do it at the treatment facility not at her house, but Kachmarik insisted. Kachmarik stated that Seymour was being reassigned due to her "decreasing performance" and Kachmarik said that she had been "caught off guard by your personal life."

19.     In August 2011, Kachmarik made multiple inappropriate comments to Seymour over the course of one month when Kachmarik was at the farm. Kachmarik pointed out two young baby stallions that had erect penises one afternoon when they were out in the pasture. Kachmarik looked at Seymour and said, "LOOK AT THOSE-NICE!" Kachmarik stated on another day that "Your jeans fit well," and then again "You look good in your jeans," but then added that Seymour needed to put on some weight.

20.     On another occasion, Kachmarik made the comment that "You are sexy all the time, even at the farm working with horses." Then in a weird thing, Kachmarik went shopping

5

and bought red boots and accessories that were very similar to what Seymour had worn to the farm. Kachmarik came to the farm after shopping and was in her new clothes and she asked if Seymour wanted to see her in her clothes as she was walking towards Seymour. Kachmarik then abruptly turned around and put her rear end facing Seymour and said, "Well?"

21.     In September 2011, Kackmarik hired a new farm hand who was a person with no professional horse experience and no experience working with clients at the treatment facility. In front of this new employee, Kachmarik made another comment about Seymour's weight, stating "Kristi you need to put on some weight and fill out your jeans." When Seymour looked up to the porch they both were looking at her and they both laughed and said that they needed to get Seymour fattened up. Two weeks later Seymour was demoted again. The horse duties were taken away from Seymour and given to the new employee. Seymour's job was now to only facilitate Equine Psychotherapy sessions.

22.     In September 2011, Kachmarik and her husband, George Kachmarik, informed Seymour that if Kachmarik wanted to continue to live at the farm that she had to sign a lease and now pay rent. Kachmarik said that there were now many rules for visitors to the farmhouse. For example, any visitors could not be at the house before 4:30 in the afternoon and they had to get up and leave the house before 6:30 a.m. Kachmarik said that Seymour could not have visitors over during certain times on a Saturday and she created many other restrictions that made it difficult to live there and not put stress on a personal relationship. A few days after this, the new employee began arriving an hour early to work multiple times during the following weeks to see if Seymour was violating any of the lease rules.

23. In October 2011 Kachmarik and her husband, George Kachmarik, cancelled the lease and gave Seymour thirty days notice to move out of the farmhouse. Seymour did not violate any of the terms of the lease.

24. Kristi Seymour was terminated by the Defendant on or about November 11, 2011.

25. The actions of Kachmarik and other representatives of the Defendant were uninvited and unwelcome on the part of the Plaintiff and made her workplace a hostile, offensive, and abusive environment. The conduct was sufficiently severe or pervasive to alter the conditions of employment and create a hostile working environment.

26. Because Kristi Seymour rejected and opposed the sexual comments and advances of Kachmarik, she was retaliated against, demoted on two occasions, and terminated.

## COUNT ONE

## SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT

27. The Plaintiff re-alleges the allegations contained in Paragraphs 1 through 26.

28. The conduct of the Defendant constitutes discrimination against the Plaintiff affecting a term, condition, or privilege of employment because of her gender in violation of 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1991.

29. The Defendant is strictly liable for the actions of Kachmarik and the other representatives of the Defendant in that the acceptance or rejection of the sexually hostile and offensive work environment was an expressed or implied condition to receipt by the Plaintiff of certain job benefits and the cause of tangible job detriments and the Plaintiff was demoted then terminated in retaliation for rejecting the sexual conduct and sexual advances by Kachmarik.

30. In the alternative, the Defendant is responsible and liable for the conduct of Kachmarik and the other representatives of the Defendant under the doctrine of respondeat

superior because of their supervisory positions and because the Defendant knew or should have known of their actions and failed to take prompt, effective, and complete remedial action. By this failure, the Defendant approved and ratified the actions of Kachmarik and the other representatives of the Defendant.

31. As a result of the actions of the Defendant, the Plaintiff has lost tangible job benefits including a loss of income and benefits both in the past and in the future, and has suffered and will continue to suffer irreparable injury, emotional distress, pain and suffering, and other pecuniary losses as a direct result of the actions of the Defendant.

COUNT TWO

RETALIATORY DISCHARGE

32. The allegations of Paragraphs 1 through 31 are incorporated herein by reference.

33. The retaliatory actions of the Defendant violated the provisions of 42 U.S.C. § 2000e *et seq*. and the Civil Rights Act of 1991.

34. The Defendant is responsible for and strictly liable for the retaliatory actions of its agents and employees or in the alternative is liable under the doctrine of respondeat superior and under agency principles.

35. As a result of the retaliation, the Plaintiff has lost tangible job benefits including a loss of income and benefits both in the past and in the future and has suffered and will continue to suffer irreparable injury, emotional distress and pain and suffering, and other nonpecuniary losses as a direct result of the Defendant's actions and failure to act.

WHEREFORE, Kristi Seymour, Plaintiff, respectfully prays as follows:

A. That proper process issue to the Defendant requiring response to this Complaint within the time allowed by law.

8

B.	That Plaintiff be awarded backpay, front pay, and other compensatory damages against the Defendant in the full amount allowed by law up to the amount of $300,000.00.

C.	That the Plaintiff be awarded pre-judgment interest.

D.	That the Plaintiff be awarded her attorney fees pursuant to the provisions of 29 U.S.C. § 216(b).

E.	That all costs of this action be taxed to the Defendant.

F.	That a jury be empaneled for trial of this cause of action.

G.	That the Plaintiff be awarded such other and further relief to which she may prove entitled.

Respectfully submitted,

_____
Kristi Seymour

OF COUNSEL:

TARPY, COX, FLEISHMAN & LEVEILLE, PLLC

By:	_____
	Thomas M. Leveille (014395)
Counsel for Kristi Seymour
1111 Northshore Drive
Landmark Tower North, Suite N-290
Knoxville, Tennessee  37919
(865) 588-1096