UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KRISTI SEYMOUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:14-CV-144-PLR-HBG |
| | ) |
| RENAISSANCE HEALTHCARE GROUP, LLC, | ) |
| d/b/a PASADENA VILLA'S SMOKY | ) |
| MOUNTAIN LODGE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This employment discrimination case is presently before the court on the motion filed by Renaissance Healthcare Group, LLC (RHG), d/b/a Pasadena Villa's Smoky Mountain Lodge, for an order enforcing the parties' settlement agreement and dismissing this action with prejudice. RHG also asks for an award of attorney's fees incurred in responding to Seymour's Complaint and preparing the instant motion to enforce settlement agreement [R. 6].

Seymour denies that she agreed to settle the case on the terms set forth by RHG or upon any terms. In addition, Seymour argues the RHG cannot rely on hearsay statements to show that she entered into an enforceable settlement agreement [R. 14]. For the reasons that follow, RHG's motion will be granted and this action dismissed.

## I. Background

Seymour is a former RHG employee. In her Complaint, Seymour alleges RHG subjected her to a hostile work environment, and terminated her in retaliation for complaining about the hostile work environment, in violation of Title VII of the Civil Rights Act of 1964. Prior to filing her Complaint, Seymour filed a Charge of Discrimination with the EEOC based on the same allegations. While the EEOC Charge was pending, Seymour and RHG agreed to mediation with the assistance of Chris Wing, a mediator with the EEOC.

Initially, Seymour demanded $75,000, and a positive letter of recommendation on RHG letterhead in exchange for a general release of all her claims. After some negotiation, Seymour lowered her demand to $5,000, a neutral reference, and RHG's agreement to tell prospective employers that she was eligible for re-hire at RHG. RHG rejected this demand and counter-offered to pay Seymour $2,000 and provide a neutral reference to prospective employers, in exchange for a general release of all claims against RHG, and non-disparagement and confidentiality clauses.

RHG asserts that on May 10, 2012, Seymour and RHG reached a valid and binding agreement to settle all claims between them. Mediator Wing emailed RHG's counsel to report, "Ms. Seymour stated that she would settle this matter for $2,000 and sign your 'Release of All Claims' which I did fully explain to her." Mediator Wing instructed RHG's counsel to forward to him the necessary settlement documents, which he would send to Seymour. Mediator Wing and RHG's counsel understood Seymour would "print and sign" the settlement documents and "then scan and E-mail" them to

2

Mediator Wing, "with the documents containing her original signature to follow in the US Mail." RHG's counsel forwarded the necessary settlement documents, executed by RHG, to Mediator Wing on May 31, 2012.

RHG never received executed copies of the settlement documents. On June 22, 2012, and July 11, 2012, RHG's counsel contacted Mediator Wing to check on the status of Seymour's execution of the settlement documents. Mediator Wing contacted RHG's counsel on July 16, 2012, and confirmed that Seymour had accepted RHG's $2,000 offer in May 2012, and that Seymour had requested that RGH mail the settlement check to her mother's house. Mediator Wing then informed RHG's counsel that Seymour wanted to renege on the settlement agreement and had hired an attorney (her counsel in this action, Thomas Leveille). Mediator Wing told RHG's counsel he had attempted to contact Attorney Leveille to confirm the attorney's representation of Seymour, and to inform him that she had settled her claims. Mediator Wing told RGH's counsel that he would call back once he confirmed the attorney's representation of Seymour and their position on settlement.

On August 16, 2012, RHG's counsel sent a letter to both Seymour and Attorney Leveille to inquire whether Attorney Leveille intended to represent Seymour and to inform him of the settlement agreement. Neither Seymour nor Attorney Leveille responded to the letter.

On February 11, 2013, Mediator Wing contacted RHG's counsel to report that he had finally made contact with Attorney Leveille. Mediator Wing reported that Attorney Leveille confirmed he had received RHG's August 16, 2012, letter and was "still figuring

3

out what to do." Attorney Leveille also told Mediator Wing that, as a result of the parties' settlement agreement, he might "drop Seymour as a client." Mediator Wing assured RHG's counsel that he would let counsel know what Attorney Leveille decided and keep counsel posted. RHG's counsel did not hear from Mediator Wing again.

Attorney Leveille filed the instant Complaint against RHG on April 7, 2014, alleging a hostile work environment and retaliation in violation of Title VII.

RHG asks the court for an order enforcing the parties' settlement agreement and dismissing this action with prejudice. RHG also asks for an award of reasonable attorney's fees incurred in responding to Seymour's Complaint and preparing the motion to enforce settlement agreement.

## II. Analysis

### A. Enforcement of Settlement Agreements

District courts have the inherent power to enforce agreements in settlement of litigation, even if the agreement has not been reduced to writing. *Bowater N. Am. Corp. v. Murray Mach. Inc.,* 773 F.2d 71, 76-77 (6th Cir. 1984); *see also Henley v. Cuyahoga County Bd. of Mental Retardation & Developmental Disabilities,* 141 Fed.Appx. 437, 442 (6th Cir. 2007) ("The district court's power to summarily enforce settlements extends to cases where the parties' agreements are not in writing and even to those settlement agreements made off the record, not in the presence of the court"). Public policy strongly favors settlement of disputes without litigation, including in Title VII cases. *See Aro*

4

*Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir. 1976); *Williams v. L.C.P. Chem. Inc.,* 802 F.2d 461 (Table), 1986 WL 17528 at *2 (6th Cir. 1986) (settlement is similarly encouraged in Title VII cases).

Before enforcing a settlement, the court must conclude that agreement has been reached on all material terms. *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir. 1988). An evidentiary hearing may be required where facts material to an agreement are disputed. *Aro Corp.,* 531 F.2d at 1372. However, no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present. *Id.* Thus, summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement. *Kukla v. Nat'l Distillers Prods. Co.,* 483 F.2d 619, 622 (6th Cir. 1973). In so determining, the Sixth Circuit instructs district courts to consider whether the objective acts of the parties reflect that an agreement has been reached. *Re/Max Int'l Inc. v. Realty One, Inc.,* 271 F.3d 633, 646 (6th Cir. 2001).

The existence of a valid settlement agreement is not diminished by the fact that the parties have yet to memorialize the agreement. *Moore v. U.S. Postal Serv.,* 369 Fed. Appx. 712, 171 (6th Cir. 2010). "When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *Id.* Only the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement. *Henley,* 141 Fed.Appx. at 443. Ultimately, the court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement. *Brock,* 841 F.2d at 154.

5

A settlement agreement is merely a contract between the parties to the litigation, and as such, the formation, construction, and enforceability of a settlement agreement are governed by Tennessee law. *Sweeten v. Trade Envelopes, Inc.,* 938 S.W.2d 383, 385 (Tenn. 1996). Under general principles of contract law, a contract must result from a meeting of the minds of the parties in mutual assent to the terms. *Id.* Under Tennessee law, a contract may be either expressed or implied, written or oral. *Johnson v. Central Nat. Ins. Co. of Omaha,* 356 S.W.2d 277, 281 (Tenn.Ct.App. 1962).

Based on the record herein, the court finds that the parties reached a binding agreement to settle all of Seymour's claims on May 10, 2012, when Seymour accepted RHG's offer to pay her $2,000 in exchange for a general release. Her acceptance is confirmed in Mediator Wing's May 10, 2012, email to RGH's counsel. Further evidence of Seymour's acceptance of the offer is shown by her instruction to forward the settlement check to her mother's house. The fact that Seymour now wishes to change her mind is insufficient to invalidate the settlement agreement reached by the parties. After-the-fact sentiments do not merit setting aside an otherwise complete settlement agreement. *See Stewart v. Carter Mach. Co. Inc.,* 82 Fed.Appx. 433, 436 (6th Cir. 2003) ("settlor's remorse" is not a sufficient reason to invalidate an enforceable oral agreement to settle a case); *Ashley v. Blue Cross & Blue Shield of Michigan,* 225 F.3d 658 (Table), 2000 WL 799305 at *2 (6th Cir. 2000) (the fact that plaintiff may have had a change of heart following the settlement . . . is insufficient to invalidate an otherwise valid settlement agreement entered into by the parties).

6

Case 3:14-cv-00144-PLR-HBG   Document 16   Filed 03/30/15   Page 6 of 12   PageID #: 105

Seymour asserts that RHG's motion relies on factual statements concerning settlement negotiations that RHG alleges occurred between the parties. Specifically, RHG's claim that the parties consummated an oral settlement agreement is based on the Affidavit of Adriana Midence Scott, counsel for RHG. The actual statements which RHG claims are the basis for the consummation of the oral settlement agreement are statements of Chris Wing, the EEOC mediator. No affidavit of Chris Wing was submitted in support of RHG's motion. Seymour asserts such hearsay statements are not admissible on the issue of whether the parties consummated an oral settlement agreement under Federal Rule of Evidence 802. Seymour argues the hearsay statements alleged to have been made by Mediator Wing to RHG counsel that Seymour agreed to settle her case for $2,000 plus the signing of a release must be disregarded. Therefore, there is no admissible evidence that an oral settlement was consummated.

In support of her argument that no oral settlement was entered into by the parties, Seymour submits her declaration, which states in pertinent part, as follows:

> 3.   I am aware that Renaissance Healthcare Group, LLC, is claiming that I agreed to settle my claims that I have asserted in this lawsuit.
>
> 4.   I did not agree at any time to settle my claims against Renaissance Healthcare Group, LLC, for the amount of $2,000.00 or for any amount.
>
> 5.   I never executed any of the proposed settlement documents that were sent to me through the EEOC.

[R. 14-1]. Seymour further argues that an evidentiary hearing is required when facts material to an agreement are disputed, citing *RE/MAX Int'l Inc. v. Realty One, Inc.,* 271 F.3d 633, 646 (6th Cir. 2001). Seymour also contends that evidence of any settlement

7

negotiations is not admissible under Federal Rule of Evidence 408. In support of her argument, Seymour relies on *Bridgeport Music, Inc. v. Justin Combs Pub.,* 507 F.3d 470, 480 (6th Cir. 2007) (holding that evidence of settlement negotiations was not admissible proof of punitive damages) . The court finds Seymour's arguments unpersuasive in light of the applicable law.

Federal Rule of Evidence 408 does not bar admission of evidence regarding the parties' settlement negotiations and agreement. Rule 408 only excludes evidence of settlement negotiations when used "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," but the court may admit this evidence for "another purpose." Fed.R.Evid. 408(a) and (b). *Bridgeport Music* is inapposite to the facts of this case. In *Bridgeport,* the defendants attempted to introduce evidence of a settlement offer to show that the plaintiffs were not entitled to punitive damages. The Sixth Circuit held that the district court's exclusion of the defendants' evidence under Rule 408 was not an abuse of discretion because the evidence was not relevant or admissible on the issue of liability.

Contrary to Seymour's arguments, federal courts are in agreement that evidence of settlement negotiations is admissible, and proper for the court's consideration. *See Evans v. Troutman,* 817 F.2d 104 (Table), 1987 WL 37221 at *3 (6th Cir. 1987) (Rule 408 does not require exclusion when the evidence of an offer to compromise is offered for a purpose other than to prove "liability for or invalidity of the claim or its amount); *Glen Elec. Holdings GmbH v. Coolant Chillers, Inc.,* 2013 WL 2407613 at *6 (W.D.Mich. 2013) (holding that where evidence of settlement negotiations was offered to prove the

8

existence and terms of the settlement agreement itself . . . Rule 408 does not apply); *Catullo v. Metzner,* 834 F.2d 1075, 1079 (5th Cir. 1987) (finding district court's exclusion of evidence relating to a settlement agreement to be reversible error where the evidence was offered to prove the terms of the agreement itself); *Central Soya Co. v. Epstein Fisheries, Inc.,*676 F.2d 939, 944 (7th Cir. 1982) (holding that the district court erred in excluding the testimony of an accountant who was present during negotiations where the purpose was to demonstrate what the terms of the settlement were).

Seymour's argument that the court cannot consider statements made by Mediator Wing because they are inadmissible hearsay is also without merit. Seymour's statements to Mediator Wing, as well as his statements made to RHG on behalf of Seymour, are admissible under Federal Rule of Evidence 801(d)(2) because they constitute admissions by a party opponent. Moreover, by agreeing to mediation, which Seymour does not dispute, she authorized Mediator Wing to communicate with RHG's counsel on her behalf. Therefore, the court finds that neither Rule 408 nor Rule 802 (hearsay) bar the court's consideration of this evidence.

Next, the court must consider whether the objective acts of the parties reflect that an agreement was reached in this case. The court finds that they do. After receiving notice via email from Mediator Wing that Seymour had accepted RHG's offer to settle for $2,000 in exchange for a general release, RHG's counsel forwarded the settlement documents, which had been executed by RHG. Seymour admits that she received the settlement documents from Mediator Wing. Seymour has submitted no evidence that she attempted to contact Mediator Wing to refute that the parties had reached a settlement;

9

and she does not deny that she told Mediator Wing that she wanted to renege on the settlement because she had changed her mind after consulting an attorney. Seymour also does not deny that she instructed RHG to forward the settlement check to her mother's house. The court finds that these objective acts of the parties show that an agreement had been reached to settle Seymour's claims against RHG. Therefore, the court finds that there is no issue of fact regarding the terms of the parties' settlement agreement, and an evidentiary hearing will not be necessary. The Sixth Circuit has found summary enforcement of a settlement agreement appropriate where no substantial dispute exists regarding the entry into and terms of an agreement. *See RE/MAX,* 271 F.3d at 646. Accordingly, the court will enforce the parties' settlement agreement and dismiss this action, with prejudice.

### B.  RHG's Motion for Attorney's Fees

RHG asserts that by filing the instant action, Seymour and her counsel have acted in bad faith, entitling RHG to an award of its attorney's fees incurred in responding to the Complaint and preparing the motion to enforce the settlement agreement.

Under the American Rule, parties bear their own attorney fees; however, as part of its inherent powers, a district court may award attorney fees in its discretion, without statutory authorization, for willful violation of a court order by the losing party, or bad faith, or oppressive litigation practices. *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 275 (1985). Moreover, a district court has supervisory power to regulate the conduct of attorneys and parties before it, which may include awarding attorney fees.

*United States v. Payner,* 447 U.S. 727 (1980). However, to award attorney fees under the court's inherent powers, requires a finding that a party or attorney "willfully abused judicial processes by conduct tantamount to bad faith." *Jones v. Continental Corp.,* 789 F.2d 1225, 1229 (6th Cir. 1986).

Seymour has not responded to RHG's motion; and therefore, failed to refute RHG's allegations that Seymour filed this action in bad faith. In addition, Local Rule 7.2 of this court states that "failure to respond to a motion may be deemed a waiver of opposition to the relief sought." Prior to filing her Complaint, Seymour was aware that she had accepted RHG's settlement offer, and requested RHG to send the settlement check to her mother's house. In addition, Seymour and her attorney were notified of the parties' settlement by both Mediator Wing and RHG's counsel in 2012. By filing this action based on claims Seymour and her attorney knew were previously settled, the court finds that she and her attorney acted unreasonably and in bad faith. *See Jaynes v. Austin,* 20 Fed.Appx. 421, 427 (6th Cir. 2001) (attorney fees appropriate when party attempted to obstruct and delay resolution of the action by ignoring the fact that he had already agreed to resolve the dispute). Accordingly, the court finds that RHG is entitled to its attorney's fees incurred in responding to Seymour's Complaint and preparing the instant motion.

## III.  Conclusion

In light of the foregoing discussion, RHG's motion to enforce settlement agreement [R. 6] is **GRANTED,** and Seymour's claims against RHG are **DISMISSED, with prejudice.**  In addition, RHG's motion for attorney's fees is **GRANTED.**  RHG shall submit its motion for attorney's fees within **thirty (30) days.**

Enter:

_____
**UNITED STATES DISTRICT JUDGE**